## DOLAK v CITY TRUST & SAV BANK

Ohio Appeals, 7th Dist, Mahoning Co

No 2256.   Decided Jan 8, 1936

Fred J. Heim, Youngstown, and W. O. R. Johnson, Youngstown, for plaintiff in error. McKain, Ohl & Swanner, Youngstown, for defendant in error.

## OPINION

By CARTER, J.

The chief complaint of the defendant bank is to the effect that the court erred in overruling the oral motion of the bank that the judgment in favor of the Dolaks should have been in accordance with the plan established for the reopening of the defendant bank, which was to the effect that 35 per cent of the amount found due the Dolaks be held to be an obligation of the Mutual Holding Company, and that the balance of 65 per cent should be held to be the obligation of the defendant bank only. Now, the record discloses that the defendant bank went into the hands of the Superintendent of Banks, and a plan was finally evolved for the re-opening of same. The matter was brought before the Court of Common Pleas of Mahoning County for determination and the plan submitted was approved by the Court of Common Pleas after objections were filed and considered. The case was prosecuted to the Court of Appeals and in that court the reopening plan, as established by the Court of Common Pleas, was affirmed. In this order of reopening certain restrictions and conditions were imposed on depositors.

It is not necessary for this court to determine in this case whether as a matter of law those who did not object to the reopening of the bank are bound by the reopening order. Suffice it to say that the action of Mary Dolak approved the plan by acceptance of certificate of the Holding Company and accepting the release of a fixed amount of their deposit, and interest thereon, in conformity with the reopening plan, and, as we view it, she is entitled to no preference in the releasing of deposits, but is bound by the reopening order. Therefore, the judgment in favor of Mary Dolak is hereby modified to conform with the reopening order. This modification is made under and by virtue of the authority vested in this court by reason of Article 4, §6, of the Constitution of the State of Ohio, wherein Courts of Appeals are authorized to affirm, reverse or modify judgment of the lower courts. This disposes of

the one error urged in the brief of the defendant bank.

We now come to the errors urged on behalf of Martin Dolak. Plaintiff in error, Martin Dolak, urged that the court committed prejudicial error in holding as a matter of law that the defendant, The City Trust & Savings Bank, was entitled to a judgment against him upon the promissory note set out in the third amended cross petition; that is, in withdrawing the evidence from the jury and directing the jury to return a verdict in favor of the bank against him, in the amount of $10102.61, and urges that there were questions of fact involved in the pleadings and the evidence requiring the submission of same to a jury. Now, the cross-petitioning bank claimed that on the 14th day of October, 1931, Martin Dolak was indebted to defendant in the sum of $8000.00, and interest upon a promissory note, by reason of his endorsement thereof, and it is admitted by Dolak that he did sign upon the back of this $8000.00 note, as set out in the cross petition of the defendant bank, and it will be observed that above his indorsement is found the following:

"The undersigned indorsers hereby waive presentment demand of payment, protest and notice of non payment or of protest and guarantee payment of this note at maturity."

Martin Dolak filed an answer to the third amended cross petition of the defendant bank, in which he claims that it was agreed by and between the Youngstown State Bank and the officers and directors thereof and the defendant bank that the Youngstown State Bank, through its officers and directors should execute this note to the defendant in the sum of $8000.00, and that the directors of the Youngstown State Bank should sign the back of said note as indorsers, and that in consideration thereof the cross petitioner would give the Youngstown State Bank a credit upon its books in the sum of said note, to-wit, $8000.00, and that neither the officers nor the directors of the Youngstown State Bank, under said agreement, were to be either primarily or secondarily liable to the defendant bank for said sum of $8000.00, or any part thereof, and that pursuant to this agreement he signed upon the back of this note.

Now, it is also urged that this note is an obligation of the Youngstown State Bank. There can be no doubt that the Youngstown State Bank received the benefit of the money raised by virtue of the execution and delivery of this $8000.00 note to the defendant bank. It was raised for its benefit. There appears upon the face of this note, as makers, the names of Michael Willo and Carl F. Mogg. The others are indorsers only. To the left and below the names of the two makers is found typewritten, the following:

"Youngstown State Bank."

And also to the right is found the following typewritten thereon:

"Upland Avenue."

And it is urged that the obligation created by this note is the obligation of the Youngstown Bank, by reason of the fact that its name is typewritten upon the face of this note. In this we cannot concur The circumstances surrounding this transaction satisfy us that the real makers of the note are Michael Willo and Carl F. Mogg. There was, therefore, no question of fact to submit to the jury on this issue.

It is urged in the answer to the cross petition of the bank on its note that there was no consideration for the indorsement of Dolak thereon. The fact alone that the Youngstown State Bank, in which Dolak was a stockholder and officer, was in need of funds in order to further operate, was sufficient consideration for his execution of the note. Also see the case of **The State on Relations ex Lattner, Deputy Supt. of Banks v Hills, 94 Oh St 171.** In this there was no question of fact to be submitted to the jury.

It is further urged that there is some evidence to substantiate this claim, that at the time of the execution and delivery of the note in question to the defendant Bank, that it was agreed that the signers thereon were not to be liable, either primarily or secondarily, for its payment. Objection was made to the introduction of any evidence varying the provisions of the note. This objection was overruled and testimony admitted by the trial court. Can such a parol arrangement between the parties be shown to affect the obligation as indicated by the note in question? It appears to be the universal rule, and the rule in Ohio, that parol evidence is inadmissible to vary or contradict a written instrument, and this rule is applicable to promissory notes. §8121 GC of the Negotiable Instruments Act is cited by counsel for Dolak. This section provides that:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect to it. As between immediate parties and as regards a remote party, other than a holder in due course, the delivery in order to be effectual must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be. In such cases the delivery may be shown to have been conditional or for a special purpose only and not for the purpose of transferring the property in the instrument. But when the instrument is in the hands of a holder in due course, a valid delivery of it by all parties prior to him so as to make them liable to him is conclusively presumed; and when the instrument is no longer in the possession of a party whose signature appears thereon a valid and intentional delivery by him is presumed until the contrary is proved."

Parol evidence is admissible in a case wherein this statute is applicable; that is to say that the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument. In other words, parol evidence is admissible to prove that the promissory note was not intended to become effectual until the happening of the specified event at some date subsequent to its delivery that is a condition precedent to be performed before the note becomes effectual. Such is not the case at bar. There is no claim in the pleadings or evidence that any condition or conditions precedent were to be performed by the bank before the note became effectual. In other words, the makers and indorsers executed and delivered the note for the purpose of raising the $8000.00 to liquidate the impaired capital and intended the property in the note to pass. There was no conditional delivery or for a special purpose within the meaning of this statute. The matters that may be shown under this statute are matters going to the question of whether the delivery was conditional or for a special purpose, and not for the purpose of transferring the property in the instrument. The statute was not applicable to the case at bar, and therefore there was no question to submit to the jury under this statute. Was such evidence admissible to vary or contradict the note in question? We are satisfied that such could not be done.

A.L.R., 490;

Morris v Faurot, 21 Oh St, 159;

Bucher v Dunlop, 52 Oh St, 64;

Cummings v Kent, 44 Oh St, 92;

Cassille v Cassille, 57 Oh St, 582;

Robinson v Second National Bank, 9 Oh Ap, 124;

Roberts v Bank, 8 Oh Ap, 185;

John Lille, Executor v James L. Bates et. 2 O. Cir. Dec., 54;

Martin v First National Bank Geneva, 30 Cir. Ct., 398;

Credit Co. v Bishop, 34 Oh Ap, 217;

17 O. Juris. page 502, 508.

The remaining question presented for consideration arises out of the following allegation in the second defense of Dolak to the cross petition of the defendant. This allegation is as follows:

"That the Youngstown State Bank through its officers and directors, should execute a note to the defendant herein in the sum of $8000.00, and that the directors of said Youngstown State Bank should sign the back of said note as indorsers; that in consideration thereof the defendant and cross petitioner would give said State Bank a credit upon its books in the sum of said note, to-wit, $8000.00; that said $8000.00 was to be retained by said defendant and cross petitioner as a security and collateral for said note; that pursuant to and in accordance with said plan and agreement, this plaintiff, on behalf of and for said bank, signed his name upon the back of the note; that if it shall appear that said defendant bank in violation of its agreement hereinbefore referred to in any manner surrendered or parted with the $8000.00 so held in its hand as security for such note the same was done without the knowledge or consent of this plaintiff and in breach and violation of its agreement and that this plaintiff has been thereby released and discharged from any and all liability, if any, thereunder."

And there is evidence in the record in substantiation of this allegation. It also appears from the record that at the time of the execution and delivery of the note in question, that the defendant bank did issue a certificate of deposit to the Youngstown State Bank in the amount of $8000.00 and retained the $8000.00 in its own bank. The general rule appears to be that where collateral is held by a creditor to secure an obligation of the debtor, that such collateral security cannot be released to the detriment of a guarantor or indorser without the acquiescence or consent of such indorsers or guarantor, that upon payment of the obligation by such indorsers or guarantor they are thereupon subrogated to the securities held by the creditor for the pur-

pose of reimbursement, and if such securities are released without the acquiescence or consent of the guarantor, or consent of the indorsers, such are released to the extent of the damage suffered thereby. See Joyce, Defenses to Commercial Paper, Second Ed., paragraph 990; Stearns on Suretyship, 3rd Ed., paragraph 98 et seq.; 28 Corpus Jur., page 1667, paragraph 169, wherein the author states:

"A guarantor who pays the debt of the principal debtor is entitled to be subrogated to whatever rights and collateral security the guarantee held, and for this reason it is well settled that the surrender or release by a creditor without the guarantor's consent of any security held at the time when a third person guarantees the debt will operate as a discharge of the guarantor to the extent that he is injured thereby, and this rule also applies where security for the debtor untaken is lost by the negligence of the creditor or where security or fund applicable to the payment of the guarantee are applied to the payment of other debts but the guarantor is not entirely discharged unless the security surrendered or lost equals or exceeds the amount of the secured debt. The guarantor's liability will not be affected where he consents to the surrender or release of other security or has misled the creditor into thinking that he has consented or where the subject matter of the securities released to one having a superior lien or is disposed of under proceedings in bankruptcy except to the extent of the amount paid by the trustee in bankruptcy to the creditor or where the loss of security is caused in good faith by a mistake of judgment on the part of the guarantee or without any negligence or breach of duty on his part or where there has been merely a change in the form of the security."

And many other authorities might be cited to the same effect, which we deem unnecessary.

It might be urged that under the Negotiable Instruments Act of this state the surrender of collateral securities is not included within the methods of discharge of such instruments as provided in §§8224, 8225, GC. However, §8300 GC provides that:

"In any case not provided for in this division, the rule of law merchant shall govern."

And the general rule under the law merchant did protect guarantors and indors-

ers in this right. See **Frazier v First National Bank, 2 Oh Ap, 159.**

It might be further urged that the $8000.00 which Dolak claimed was to be held as collateral security to secure the note of Mogg and Willo, and the indorsers thereon, was not money belonging to the principal makers of the note, that is Mogg and Willo. However, the $8000.00 raised by the issuance of the note in question was the money of the makers of the note and raised for the purpose of assisting the bank in its dilema. The officers of each bank appear to have known that fact. It was the officers of one bank dealing with the officers of another bank, and we believe that such an arrangement could have been entered into by the parties in this case and that the defendant bank, upon presentation to it of the certificate of deposit for the purpose of securing the cash, could have refused under such an arrangement to pay same and held the $8000.00 under the agreement until the note was paid. This money was under the control and in the possession of the defendant bank at all times until it was paid out, if such was done by the defendant bank. Dolak claims that this $8000.00 was to be held as such security for the payment of this note and that the defendant bank had breached this agreement by the paying out of the money without his consent and that he was thereby released. There was, therefore, a disputed question of fact as to whether such was or was not the agreement between Dolak and the bank at the time he signed this note. This in no way varies or contradicts the terms of the note but a claimed collateral arrangement made between the bank and Dolak in connection with the retention by the bank of the $8000.00 as security or collateral security for the payment of same, there being a disputed question of fact, we believe that the court erred in not permitting the jury to pass upon this question, to-wit:

"Whether there was such an agreement between the defendant bank and Dolak that this $8000.00 was to be retained by the defendant bank as collateral security for the payment of the $8000.00 note and as to whether such contract has been breached by the bank and if so to his damage."

Cause reversed and remanded to the Court of Common Pleas for the determination by a jury of these disputed questions of fact.

Judgment reversed.

**NICHOLS** and **ROBERTS**, JJ, concur.