THE CITY TRUST & SAVINGS BANK, APPELLANT, *v.*
SCHWARTZ ET AL., APPELLEES.

(No. 2656—Decided September 27, 1940.)

*Messrs. McKain, Ohl & Swanner,* for appellant.
*Messrs. Friedman & Rummell* and *Mr. C. W. Osborne,* for appellees.

NICHOLS, P. J. In the Common Pleas Court of Mahoning county, The City Trust & Savings Bank, herein referred to as plaintiff, brought its action against Walter J. Schwartz and Mary L. Schwartz,

herein referred to as defendants, to recover the unpaid balance due on a promissory note executed and delivered by defendants to The Youngstown State Bank, the latter bank having been subsequently consolidated with the plaintiff bank in accordance with the provisions of Section 710-86, General Code, the plaintiff, by the terms of the consolidation agreement, becoming the owner and holder of the note and the mortgage given by defendants to secure the same, and becoming also the owner of other assets of The Youngstown State Bank, in consideration of which the plaintiff bank agreed to and did pay all of the indebtedness of The Youngstown State Bank.

By their amended answer to plaintiff's petition, defendants admit they are husband and wife and that they signed the instrument set up in the petition "at the instance and request of John A. Willo and The Youngstown State Bank"; and deny all other allegations of the petition.

For their further defense, defendants allege:

"* * * that on or about the 14th day of February 1928, John A. Willo requested that he be permitted to place the title to certain real estate in the name of defendants, and that defendants execute a note and mortgage to The Youngstown State Bank; that said The Youngstown State Bank agreed, at the time said note and mortgage were executed, that there was no personal obligation on the defendants therefor; that said bank knew that the transaction was only an accommodation to said John A. Willo, the true and lawful owner of the premises covered by such mortgage, and that said bank further represented and agreed that in the event of default, it would not look to the defendants for payment; that in permitting the title to be placed in their names, and in the execution of said note and mortgage, defendants were the trustees only for said John A. Willo, which information was well known to

said bank; that defendants received no money from said bank and no consideration whatsoever for said note and mortgage; that they immediately reconveyed said real estate to said John A. Willo; that they never made any payments on said note; that all payments made on account of the same, the principal of which has been reduced by one thousand dollars ($1,000), were made by John A. Willo, the true and lawful owner of said premises; that when The Youngstown State Bank merged with The City Trust & Savings Bank, the plaintiff herein, the entire transaction was made known to said bank, and the plaintiff took the same with full knowledge of the situation and of the representations and agreements of The Youngstown State Bank, and was not an innocent purchaser for value; that all payments made since the plaintiff became the owner and holder of said note and mortgage have been made by the real owner of said premises and not by the defendants; and that by reason of all of the foregoing the defendants are not indebted to the plaintiff in any manner or amount whatsoever on account of said obligation, and that plaintiff is not entitled to a money judgment against these defendants.''

The reply of the plaintiff consists of a general denial of the defensive allegations of defendants' amended answer, and alleges that if any officer or agent of the plaintiff bank had knowledge of the facts and circumstances as claimed in the amended answer, and acted thereon, he did so without authority of the board of directors of the plaintiff bank, and that his actions, if any, with respect thereto were not known to or approved by such board of directors.

The cause came on for hearing in the Common Pleas Court, trial by jury being waived by the parties. That court found the amount due on the promissory note to be one thousand dollars ($1,000), with interest at seven

per cent from September 15, 1931, and decreed foreclosure and sale of the mortgaged premises for payment of the amount found due, but expressly denied plaintiff a personal judgment against the defendants on the note, finding upon that branch of the case in favor of defendants.

Plaintiff has appealed to this court on questions of law and fact from the judgment of the Common Pleas Court, and the cause has been submitted on the original pleadings and the transcript of the evidence taken in the lower court. There is no controversy between the parties as to the amount due or as to the right of plaintiff to the decree of foreclosure of the mortgaged premises; hence the question arises whether this court should consider the appeal as one of law and fact or one of law only. However, without objection, the parties have submitted the cause here as one properly appealed on questions of law and fact. No additional evidence having been introduced in this court, we conclude that the cause should be considered and determined as an appeal upon questions of law and fact, and the same is heard *de novo*.

The testimony offered on behalf of defendants, if competent and admissible, is, in our opinion, sufficient to establish the allegations of defendants' amended answer, except, first, the allegation that plaintiff is not the owner and holder of the note for value, second, the allegation that plaintiff took the note and mortgage with notice of any agreement that defendants were not to be held personally liable thereon, and third, instead of showing that defendants have reconveyed the mortgaged real estate to John A. Willo, we find in the record an unrecorded and undelivered deed from defendants to the wife of John A. Willo. The evidence clearly demonstrates that plaintiff paid full, valuable

consideration for the note and is, therefore, a holder for value.

The legal questions to be determined are: First, is oral testimony offered on behalf of defendants competent and admissible under the rule which forbids the admission of oral testimony to contradict the terms of an unambiguous written contract for the payment of money? Second, for what purpose may oral testimony be admitted? And third, under the negotiable instruments law of Ohio, known as the Uniform Negotiable Instruments Act, what is the liability of defendants, if any?

It appears from the record that John A. Willo, prior to the execution of the note and mortgage set up in plaintiff's petition, was indebted to The Youngstown State Bank in an amount greater than permitted by the banking laws of Ohio, and the bank examiner had reported this situation to the officers of the bank and ordered a reduction in the amount of his indebtedness to the bank.

At that time, John A. Willo was the owner of the lots described in the mortgage set up in plaintiff's petition. He went to one whom he designated as his best friend, Walter J. Schwartz, and persuaded Mr. Schwartz to accept a conveyance of these lots and to execute and deliver a note in the amount of $2,000, payable to The Youngstown State Bank or order.

It appears that Mrs. Schwartz at first declined to enter into this arrangement, and it is sought by the oral testimony offered in this case to show that the president of the bank, who was the father of John A. Willo, expressly represented to Mr. and Mrs. Schwartz that if they would sign the note for $2,000, the bank would not look to them for payment of the note but would look solely to the mortgaged real estate for the payment of the same, and that it was upon this express agreement that Mr. and Mrs. Schwartz, the de-

fendants herein, signed and delivered to the bank the note for $2,000, thus reducing the indebtedness of John A. Willo to the bank. Subsequently one of the mortgaged lots was sold and the note reduced to $1,000.

The evidence further discloses that the defendants never paid anything on this note, and that the ledger of the bank contained a notation that all notices in connection with this loan were to be mailed to John A. Willo. The notation, however, did not further show that the bank was to look to John A. Willo for the payment of the note or that the makers were not to be held liable thereon; nor is it claimed that there is any other written evidence of the agreement claimed to have been made by The Youngstown State Bank that it would not look to the defendants for payment of the note or would save them harmless on account thereof.

Other oral evidence offered by the defendants would be to the effect that the finance committee of The Youngstown State Bank, and perhaps the members of the board of directors, knew of the alleged arrangement with the defendants, although no minute thereof was made upon any records or books of the bank. There can be no question, however, even though the oral testimony sought to be here introduced is admitted, but that the note was actually delivered to The Youngstown State Bank for the purpose of giving effect to it in order to reduce the indebtedness of John A. Willo to the bank and substitute the defendants in his stead, the makers doubtless relying upon the oral promise of the president of the bank that they would not be looked to in the future for the payment of the note. The purpose of the transaction, it must be remembered, was to reduce the indebtedness of John A. Willo to the bank and enable the bank to hold among its assets the note of the defendants in place of the obligation of John A. Willo. Otherwise the arrangement would have been to no purpose whatever. It thus

appears that the oral testimony offered on behalf of the defendants would have contradicted their written contract entered into with the bank as evidenced by the note signed by them.

It must be kept in mind that it was evidently deemed necessary in order that the bank might comply with the order of the state banking department that it either require payment to be made on the indebtedness of John A. Willo or substitute therefor the note of some other maker or makers, and this must have been the understanding of the makers of the note or they would have refused to sign and deliver the same and would have insisted that the bank take only the mortgage and therein agree that the bank would look solely to the security of the mortgaged premises for the payment of the amount of the reduction of the debt of John A. Willo. Thus the evidence takes the case out of the provisions of the first sentence of Section 8121, General Code, which reads in part as follows:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect to it."

The above section further provides as follows:

"As between immediate parties, and as regards a remote party, other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or endorsing, as the case may be. In such case, the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument."

It has been ably argued in this court that plaintiff is not a holder in due course and that, therefore, oral testimony is competent to show that the delivery of the note was conditional, or for a special purpose only, and not for the purpose of transferring the property in the

instrument. There can be no doubt but that oral testimony is admissible, not for the purpose of contradicting the written contract but to show that the delivery of the note was conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. The argument, however, can avail the defendants nothing, for such evidence only shows an actual delivery of the note for the purpose of reducing the indebtedness of John A. Willo, to which end the makers signed and delivered the same for his accommodation. Indeed, the amended answer of defendants alleges that ''the transaction was only an accommodation to said John A. Willo * * *.''

Section 8121, General Code, further provides, among other things, as follows:

''And when the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved.''

In our opinion, the evidence, even if admissible, is not sufficient to overcome the presumption of a valid and intentional delivery, but goes only to show that which induced the makers to deliver the note for the known purpose of reducing the indebtedness of John A. Willo to the bank. It may seriously be doubted whether, as a matter of public policy, the makers can be permitted to defend on the ground of such agreement in view of their known participation in the design and purpose indicated by the recited facts, and especially in view of the provisions of Sections 710-172 and 710-175, General Code, which are as follows:

''Whoever being an officer, * * * or director of a bank, * * * makes a false entry in a book, report or statement of such bank, * * * with intent to defraud or injure the bank * * * or to decive * * * an agent appointed to examine the affairs of such bank, * * * shall be fined * * *.''

"Whoever, being an officer \* \* \* of a bank, resorts to a device, or receives a fictitious obligation in order to evade the provisions of this section and the next two preceding sections, \* \* \* shall be fined \* \* \*."

The record discloses that the note executed by defendants was in fact carried upon the books of the bank as an asset of the bank, and from the facts shown in the record before us, we think it must have been perfectly clear to defendants that the note would be so carried on the books of the bank and used for the purpose of deceiving the examiner who had ordered the indebtedness of John A. Willo to be reduced, Mr. Willo being at the time a director of the bank.

In *Lawrence-Cedarhurst Bank* v. *Ruth*, 162 N. Y. Misc., 82, 294 N. Y. Supp., 810, being a case similar to the one here under consideration, differing only in that the maker of the note in that case was a director of the bank and the agreement not to enforce the note was in fact ratified by the directors and stockholders of the bank, it is said in the opinion:

"\* \* \* a person who, for the accommodation of a bank, executes and delivers to that bank an instrument which is in form a binding obligation, is thereafter estopped from asserting that the parties to that obligation had collaterally agreed that it should not be enforced according to its terms."

In the case of *McFarland* v. *Hueners,* 96 Ore., 579, 190 P., 584, it was held by the Supreme Court of Oregon in paragraph six of the syllabus:

"6. A parol agreement at time of execution of a note that the payee will rely on the mortgage executed by the maker, and not assert any personal liability against the maker, is invalid, and cannot be successfully asserted to vary terms of note."

The agreement sought to be alleged in that case and sought to be proven in the case here under consideration "was in the very face of the promissory note, by

which the defendant expressly agreed to make himself personally liable.''

In the opinion of the last-cited case, it is said on page 588:

''* * * it is too well-settled to justify the citation of authorities that such an agreement in parol is invalid, and cannot be successfully asserted to vary the terms of a written contract.''

In a comparatively recent case decided by this court, entitled *Dolak* v. *City Trust & Savings Bank,* 21 Ohio Law Abs., 409, being an action upon a promissory note executed and delivered by Dolak to The Youngstown State Bank and by it transferred to The City Trust & Savings Bank in accordance with the terms of the consolidation agreement between these two banks, wherein Dolak attempted to assert a similar agreement that he was not to be held personally liable upon the note, this court stated in the opinion:

''There is no claim in the pleadings or evidence that any condition or conditions precedent were to be performed by the bank before the note became effectual * * *. There was no conditional delivery or for a special purpose within the meaning of this statute. The matters that may be shown under this statute are matters going to the question of whether the delivery was conditional or for a special purpose, and not for the purpose of transferring the property in the instrument.''

Many cases were cited in support of our conclusions in the *Dolak case.* The cause was reversed on another ground, but on a subsequent hearing in this court we adhered to our former ruling upon this particular aspect of the case. Since the Supreme Court refused to allow a motion to certify the record in that case, we can see no reason for now changing our position on this matter, and it is, therefore, the judgment of this court that the parol evidence sought to be admitted by

the defendants is incompetent and inadmissible for the purpose of varying or contradicting the express terms of the note executed and delivered by the defendants to The Youngstown State Bank and by it transferred to the plaintiff herein. Of course, it follows that since such parol testimony is inadmissible to vary the terms of the written contract as between the immediate parties, it is likewise inadmissible as between the makers and the present owners of the note who received the same for value, even though the plaintiff may not be a holder of the note in due course because it had knowledge of such parol agreement or of facts and circumstances from which. its knowledge thereof may be inferred, there being, however, in this record no offer of evidence of facts or circumstances from which such knowledge can properly be inferred.

Our position in this matter is sustained by the many cases cited in Brannan's Negotiable Instrument Law (Beutel, 6 Ed.), 272, Section 16, wherein it is held that parol evidence is not admissible to show that the maker was not to be called upon to pay the note. See, also, *Morris* v. *Faurot,* 21 Ohio St., 155, 8 Am. Rep., 45; *Cummings* v. *Kent,* 44 Ohio St., 92, 4 N. E., 710; *Beecher* v. *Dunlap,* 52 Ohio St., 64, 38 N. E., 795; *Davlin* v. *Kowalk,* 54 Ohio App., 222, 6 N. E. (2d), 798; *Cassilly* v. *Cassilly,* 57 Ohio St., 582, 49 N. E., 795; *Shannon, d. b. a. Shannon Motor Co.,* v. *Universal Mortgage & Discount Co.,* 116 Ohio St., 609, 157 N. E., 478, 54 A. L. R., 992; *Robinson* v. *Second National Bank of Cincinnati,* 9 Ohio App., 124; *Roberts* v. *Third National Exchange Bank of Sandusky,* 18 Ohio App., 185; *Commercial Credit Co.* v. *Bishop, d. b. a. Bishop Motor Car Co.,* 34 Ohio App., 217, 170 N. E., 658; *Lillie, Exr.,* v. *Bates,* 2 C. D., 54, 3 C. C., 94; *Martin* v. *First National Bank of Geneva,* 11 C. C. (N. S.), 93, 20 C. D., 398; and 17 Ohio Jurisprudence, 502 to 506, Sections 406 to 408.

We are not unmindful of the fact that in certain jurisdictions, as shown by cases cited by counsel for defendants, a contrary position has been taken, it being there held that under the Negotiable Instruments Act parol testimony of an oral agreement not to hold the maker personally liable, entered into at the time of the delivery of the note, may be admitted as showing a conditional delivery, where the maker is an accommodation maker only. We do not find this to be the rule in Ohio.

Certain other sections of the Negotiable Instruments Act require consideration. Section 8133, General Code, provides:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise."

Section 8134, General Code, provides:

"An accommodation party is one who signed the instrument as maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding the holder at the time of taking it knew him to be only an accommodation party."

Upon casual consideration, the last two quoted sections would seem to be inconsistent. However, Section 8130, General Code, defines what constitutes consideration. It is as follows:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

The three quoted sections are all a part of the same legislative enactment and must be construed together.

The allegations of defendants' answer, it has been

observed, clearly indicate that defendants executed the note and mortgage only as an accommodation for John A. Willo, and this allegation is fully supported by the evidence. The further allegation of the answer in relation to consideration for the note is simply "that defendants *received* no money from said bank and no consideration whatsoever for said note and mortgage." (Italics ours.) The quoted allegation is pertinent in connection with defendants' claim that they executed the instruments for the accommodation only of John A. Willo, but is wholly insufficient as the basis of any claim that there was no consideration for the note and mortgage.

"1. An answer to a suit on a promissory note, averring that there was no consideration for it, moving to the promisor, is not sufficient as a defense, as it does not preclude the possible fact that there was detriment or loss to the promisee, which constitutes a consideration for a promise as well as a benefit to the promisor.

"2. Where the issue is as to whether there was a consideration for a promissory note, and the evidence offered simply shows that there was no benefit to the promisor, and does not exclude the possibility that there was detriment or loss to the promisee, it is insufficient to support the issue." *Dalrymple, Admr.*, v. *Wyker, Admr.*, 60 Ohio St., 108, 53 N. E., 713.

The negotiable instruments law, among other matters, provides:

Section 8129: "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

In *Dalrymple, Admr.*, v. *Wyker, Admr., supra,* it is held in the third paragraph of the syllabus:

"3. The law presumes the existence of a consideration for a promissory note; and this presumption continues until it is shown that there was none; and the

burden of showing this is on the party attacking the note for want of consideration.''

Is there evidence in the record to overcome this *prima facie* presumption? To determine this question we must look to the above-quoted provisions of Section 8130, General Code, defining what constitutes value, and determine what consideration is sufficient to support a simple contract.

In 9 Ohio Jurisprudence, 297, Section 65, it is stated that a valuable consideration may consist either in a benefit to the promisor or a detriment to the promisee. Many cases are cited in support of the statement. It is further set forth in the section that the definition has been more elaborately stated as follows:

'' 'A valuable consideration in the sense of the law may consist either in some right, interest, profit or benefit accruing to the other party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.' ''

Reference may be had to the decisions cited and similar definition and comment thereon by referring to 9 Ohio Jurisprudence, 296 to 302, Sections 64 and 71, inclusive, under the title ''Contracts.'' See, also, *Merchants' National Bank of Cincinnati* v. *Ryan,* 67 Ohio St., 448, 66 N. E., 526; *Cordes* v. *Lindeman,* 18 C. C., 882, 6 C. D., 53; and *Judy* v. *Louderman,* 48 Ohio St., 562, 29 N. E., 181.

We think it may be safely said that a valuable consideration consists in the acquisition of some legal right by the promisor, in return for which he makes the promise, or in the giving up of some legal right by the promisee, in return for which the promise is made to him. If the promisee gives up a legal right, such forbearance is a consideration, even if the exercise of such legal right would not, in fact, have been profitable to him.

The definition given for consideration in 17 Corpus Juris Secundum, 420, Section 70, is as follows:

"Consideration is a benefit to the promisor or a loss or detriment to the promisee."

The subject of consideration for a contract is very ably discussed and many authorities cited in 12 American Jurisprudence, 570, Section 79.

In the case before us, we not only find the allegations of defendants' answer insufficient to raise the issue of absence or failure of consideration for the note and mortgage, but that the evidence offered on behalf of defendants conclusively proves full consideration for the instrument set up in plaintiff's petition, in that such evidence as well as the evidence offered by plaintiff is all to the effect that plaintiff cancelled upon its records the indebtedness of John A. Willo to The Youngstown State Bank in like amount and surrendered paper of John A. Willo evidencing his indebtedness in that amount to the bank; in fact, it is conceded by the parties that that was the sole purpose of the transaction, to the end that the demand of the bank examiner be complied with by the reduction of the loans to John A. Willo, a director of the bank, and the note bears on its face the statement that it is given "for value received."

It seems so axiomatic as to require no statement of this court that one who signs a note solely for the accommodation of another, himself receives no value therefor, but it does not by any means follow therefrom that there is no consideration for the note.

Now let us consider the provisions of Section 8134, General Code, as to the liability of an accommodation party, that is, a party who signed the instrument as maker, drawer, acceptor, or endorser, without receiving value therefor, as distinguished from one who signs upon consideration of a detriment to the payee, or the relinquishment by the payee of an existing legal right, the signer lending his name for that purpose to another. We see the section specifically provides, in language that admits of no other interpretation, that

such accommodation party "is liable on the instrument to a holder for value, notwithstanding the holder at the time of taking it knew him to be only an accommodation party."

The evidence in the record before us does no more, or less, than prove that the plaintiff is the holder of this note and mortgage for value and that it knew, at the time of taking these instruments, that defendants were only accommodation parties.

We do not find it profitable for this court to engage in the controversy which has occupied the attention of the author of Brannan's Negotiable Instruments (Beutel, 6 Ed.) as to whether the Legislature has made a mistake in the language used in this section of the act.

This court is not clothed with power to legislate, and the language used in the section is clear and unambiguous; nor will we undertake to express an opinion whether there should be an amendment of the act.

In the final analysis, the record before this court, including all the evidence offered, is insufficient to prove that plaintiff, at or previous to its taking this note and mortgage, had any knowledge of the alleged agreement of The Youngstown State Bank with defendants that such bank would not look to defendants for the payment of the note or that there was no personal obligation on the defendants therefor, or that the bank would look solely to the security of the mortgage. None of the offered testimony is to that effect, but goes only so far as to show that the defendants were makers of the note and mortgage for the accommodation of John A. Willo, the notation on the note being only to the effect that all notices should be mailed to Mr. Willo and such notation being far short of written evidence of the agreement claimed. This notation on the note card, if brought to the knowledge of any officer or agent of the plaintiff at the time, would not have informed plaintiff of such alleged agreement.

We find it unnecessary to the decision of this case

that we determine whether the plaintiff was a "holder in due course," as that term is defined in the negotiable instruments law (Section 8157, General Code) because of the fact that plaintiff took the note and mortgage as a part of the assets purchased by it under the so-called merger agreement between the two banks, although we do find: (1) That the note is complete and regular upon its face; (2) that plaintiff became the holder of it before it was due, and without notice that it previously had been dishonored; (3) that plaintiff took it in good faith and for value; and (4) that at the time it was negotiated to plaintiff, plaintiff had no notice of any infirmity in the instrument or defect in the title of The Youngstown State Bank, from or by whom it was negotiated to plaintiff.

For definition of "negotiation," see Section 8135, General Code.

The note contains the endorsement of The Youngstown State Bank, and negotiation was completed by actual delivery of the note to the plaintiff.

It is the finding of this court that the plaintiff should have personal judgment against the makers of the note set up in its petition, in the sum of $1,000 with interest at seven per cent from September 15, 1931; that a decree of foreclosure of the mortgage set up in the petition should be entered; and that entry may be prepared to that effect.

*Decree accordingly.*

CARTER and PHILLIPS, JJ., concur.