Day, J.
 

 As to the first cause of action contained in the petition, it is conceded that the Negotiable Instruments Code does not control the situation shown by the facts in this case, although Section 8300, General Code, may be said to be nearest applicable. The same provides: “In any case not provided for in this division, the rules of the law merchant shall govern.”. While counsel have presented the question, of the right to receive oral testimony to vary the terms of the implied contract arising upon the indorsement of a promissory note, the record discloses that the trial judge in fact did receive such testimony, and upon consideration thereof rendered judgment against the indorser.
 

 The plaintiff in error in his answer asks to be released from liability as an indorser on this note because of the failure of the indorsee to perform its promise to take out conversion insurance upon the automobile covered by the chattel mortgage, and in his brief cites the text of 8 Corpus Juris, 620: “Indorsers are released if the security is impaired by the act or negligence of the holder to the injury of the surety or indorser.” Also page 458.
 

 The mortgage company in its reply denied that it ever made such promise.
 

 Does the record show such fraud or mistake as - to excuse the indorser from his liability upon this
 
 *616
 
 note? The presumption was in favor of the regularity of the indorsement and the burden was on the indorser to substantiate his right to this reformation of the contract of indorsement by clear and convincing evidence.
 

 Apparently the trial court found there was nothing in the record to show that the letter of October 28 from the mortgage company to the Shannon Motor Company on its face referred in any wise to the purchase of the McCutcheon note; that, while said, letter contains the following: “If we can be of any further service to you, let us know” — the record is silent as to whether any answer or further dealings were had between the parties relative to the contents of the letter of October 28th; that there was nothing in the record to show that the mortgage company, in purchasing the McCutcheon note, had any knowledge that a portion of the $229, the face of the note, was to be used for the purchase of collision and conversion insurance.
 

 The most that can be claimed by the motor company is that this claimed agreement to take out conversion insurance was to be inferred from the letter of October 28th, and that such inference shows that which is tantamount to fraud upon the part of the mortgage company.
 

 The trial court saw the witnesses, observed their demeanor and manner of testifying, and had all the advantages offered a trial judge in arriving at a conclusion upon the facts, and, regarding the answer as tantamount to a cross-petition for reformation, found that the motor company had failed to produce the requisite degree of proof to sustain its defense; and the conclusion upon this question
 
 *617
 
 of fact was sustained by the Court of Appeals. We do’not feel authorized to disturb such decision.
 

 The general rule is that parol evidence to vary the contract implied from a regular indorsement of a promissory note is not admissible, in the absence of fraud or mistake. The contract is implied by law as clearly and perfectly from thé blank indorsement as if written out in full. In
 
 Farr
 
 v.
 
 Ricker,
 
 46 Ohio St., 265, 21 N. E., 354, this court said:
 

 “1. The indorsement of a negotiable promissory note, made to transfer the title to one who has purchased it for value, is, though in blank, an abbreviated contract in writing, whereby the indorser binds himself to pay the note if, on presentment, the maker does not, and due notice is given him of such nonpayment; and, in the absence of fraud or mistake, the legal effect of such indorsement cannot be varied by parol.
 

 “2.
 
 A blank indorsement may, like any other written agreement, be reformed upon equitable principles, in an action on the indorsement, for the purpose Of a defense. In such action the cause of reformation should be stated by way of cross-petition, with a prayer for such relief; and the averments should be supported by clear and convincing proof, to warrant the relief.
 

 “3. Where, in an action on an indorsement, evidence is offered by the defendant in support of averments in his answer which, if true, would make the enforcement of the indorsement operate contrary to the contemporaneous agreement of the parties and a fraud on the rights of the indorser, the liberal principle of our Code would, in a trial
 
 *618
 
 to the court, authorize it to receive the evidence and permit an amendment of the pleadings; but, where the evidence is contradictory and inconclusive, the refusal of the court to consider the evidence is not error, to the prejudice of the substantial rights of the indorser.”
 

 So much is said in the opinion of the above case that is applicable in principle to the instant case that we quote at length from page 266 (21 N. E., 354)
 
 et seq.:
 

 “The note had been purchased by the plaintiff of the defendant for value, in the course of business, and the indorsement was made to transfer the title. So that the case presents the question whether parol evidence is admissible for the purpose of varying the legal effect of such an indorsement. There has been some conflict in the decisions as to this, but it now seems that the decided weight of authority is against its admission for such purpose. Its admission has generally been placed on the ground that the contract of indorsement is an implied one, not in writing, and so not within the rule excluding parol evidence offered for the purpose of varying,” or contradicting “the terms of a written agreement. But this is not the generally received opinion, and is contrary to the usage and understanding of the commercial world. It is said by Justice Matthews in
 
 Martin
 
 v.
 
 Cole,
 
 104 U. S. 37 [26 L. Ed., 647]: ‘The contract created by the indorsement and delivery of a negotiable note, even between the immediate parties to it, is a commercial contract, and is not in any proper sense a contract implied by the law, much less an inchoate or imperfect contract. It is an
 
 *619
 
 express contract, and is in writing, some of the terms of which, according to the custom of merchants and for the convenience of commerce, are usually omitted, but not the less on that account perfectly understood. All its terms are certain, fixed, and definite, and, when necessary, supplied by that common knowledge, based on universal custom, which has made it both safe and convenient to rest the rights and obligations of parties to such in-. struments upon an abbreviation. So that the mere name of an indorser, signed upon the back of a negotiable instrument, conveys and expresses his meaning and intention as fully and completely as if he had written out the customary obligation of his contract in full.’ And it was there held that parol evidence is not competent to contradict or vary the legal effect of such an indorsement; and it is also stated that the cases in support of the rule ‘are too numerous for citation.’ Regarding the indorsement, though in blank, as an abbreviated written agreement, all of whose terms are, by usage and custom, made definite and certain, such would seem to be the logical result of the previous decisions of this court. Thus it has been applied in a number of cases to the making of a note
 
 (Titus
 
 v.
 
 Kyle,
 
 10 Ohio St., 445;
 
 Collins
 
 v.
 
 Insurance Co.,
 
 17 Ohio St., 215 [23 Am. Dec., 612]), and to the drawing of a bill
 
 (Cummings
 
 v.
 
 Kent,
 
 44 Ohio St., 92, 4 N. E. Rep., 710 [58 Am. Rep., 796]), and also to the acceptance of a bill
 
 (Robinson
 
 v.
 
 Bank,
 
 44 Ohio St., 441, 8 N. E. Rep., 583 [58 Am. Rep., 829]).
 

 * * That an indorsement may be reformed in equity on the ground of accident, fraud, or mutual mistake, as any other written agreement,
 
 *620
 
 so as fco make it conform to the real intention of the parties, will not admit of much doubt. • • • But such remedy must have been obtained, either by a suit for that purpose or by a cross-petition in action on the indorsement, before it can be relied on as a ground of defense. In such case the issue is triable by the court, and must be sustained by clear and convincing proof, as in all similar cases, before the reformation can be had. This remedy affords a sufficient protection against any possible wrong that may result from the rule at law, and adequately protects the holder of negotiable paper.”
 

 We regard the rule as announced in the case of
 
 Farr,
 
 v.
 
 Ricker, supra,
 
 as determining the law in this case. Additional authorities to support the same may be cited and reference is made to the following:
 
 First Nat. Bank of Midland
 
 v.
 
 Powell
 
 (Tex. Civ. App.), 149 S. W., 1096;
 
 Church
 
 v.
 
 Nat. Newark & Essex Banking Co.,
 
 97 N. J. Law, 237, 116 A., 620, 22 A. L. R., 524;
 
 Doolittle
 
 v.
 
 Ferry,
 
 20 Kan., 230, 27 Am. Rep., 166. See, also, 4 A. L. R., 770, 11 A. L. R., 637, 22 A. L. R., 524, and 35 A. L. R., 1120, in which the subject is treated in annotated cases and authorities cited.
 

 As to the first cause of action, we feel that the Court of Appeals did not err in reaching the conclusion shown by the record.
 

 The second cause of action set forth in the petition involves the question as to whether a man may take advantage of that which he is already obligated and bound to do, and offer the same as a consideration for a new contract, to relieve himself from the original obligation.
 

 
 *621
 
 The plaintiff in error was already bound as an indorser upon the Shafer note, sued upon in the second cause of action, and was liable for its payment; and the claimed agreement set forth in the second cause of action as to the mortgage company repossessing the car and returning the same, and reassigning the mortgage in order to secure payment of the note by the indorser, was not a good consideration for a new contract; for, as above indicated, the indorser was already bound for the payment of the note.
 

 “A promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation, is not a valid consideration. This legal obligation may arise from the law independent of contract, or it may arise from a subsisting contract.” 13 Corpus Juris, 351, Section 207.
 

 In
 
 Sherwin & Co. v. Brigham,
 
 39 Ohio St., 137, it was held:
 

 “1. In order to render the writer of a letter of credit liable, either upon an implied acceptance or an agreement to accept drafts taken on the faith of such letter, the drafts must be taken for a valuable consideration.
 

 “2. A promise to have the drafts discounted, and to take up notes on which the persons taking the drafts are liable as indorsers, is not a valuable consideration. ’ ’
 

 
 *622
 
 i
 

 On page 140, in the opinion of the
 
 Sherwm case,
 
 it is said:.
 

 “What they agreed to do in respect to the notes indorsed by them, and what they did, was no more than they were bound, by their contract, to do, before the defendant’s letter was written; and when they paid the accommodation notes, they paid only the amounts, and at the times, therein specified.”
 

 We find the following in Clark on Contracts (3d Ed.), at page 156: “Doing or promising what one is already legally bound to do is, as a rule, no consideration.”
 

 In 6 Ruling Case Law, p. 664, par. 73, it is said:
 

 “The performance of a duty imposed by law or arising from a contract, with the other party is not a sufficient consideration, because the performance of'such duty involves no detriment to the promisee. Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity. A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound.”
 

 See, also, 12 L. R. A., 470; 13 L, R. A., 581; 34 L. R. A., 33.
 

 An application of the principle announced by the above-noted authorities brings us to the conclusion that the common pleas court did not err in entering judgment upon the pleadings in the second cause of action, nor did the Court of Appeals err in sustaining said judgment.
 

 Entertaining these views, our conclusion is that the judgment of the Court of Appeals in affirming
 
 *623
 
 the judgment of the common pleas court was right, and such, judgment is therefore affirmed.
 

 Judgment affirmed.
 

 Kinkade, Robinson, Jones and Matthias, JJ., concur.