2001 WY 120

**Mary Beth SCHLESINGER,**
**Appellant (Defendant),**

v.

**Betty Jane WOODCOCK,**
**Appellee (Plaintiff).**

**No. 00–268.**

Supreme Court of Wyoming.

Dec. 7, 2001.

---

Representing Appellant: Stephen R. Winship of Winship & Winship, P.C., Casper, WY.

Representing Appellee: Kenneth R. Marken, Casper, WY.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Appellant Mary Beth Schlesinger and her company, Custom Syndicated Research, Incorporated (CSR), obtained numerous loans from private individuals; some were documented with promissory notes, and some were not. All the notes and the verbal negotiations described the same terms. Appellee Betty Jane Woodcock, one of the lenders with both documented and undocumented loans, sought to collect claiming the parties' course of dealing established the loan terms for the undocumented loans. After default, Ms. Schlesinger obtained Ms. Woodcock's signature on a modified loan agreement with much more favorable terms for the borrower. The trial court granted summary judgment on the documented loans and held the modified loan agreement void for lack of consideration. After a bench trial, the trial court entered judgment for Ms. Woodcock on the remaining loans finding the oral contract loans included the same terms as the written promissory notes. Ms. Schlesinger appealed the judgment as it pertained to the undocumented loans. We affirm.

## ISSUES

[¶ 2] Ms. Schlesinger presents these issues:

1. After undocumented loans were made, whether a written agreement that established the interest rates and due dates of said loans and provided the lender with a reinvestment option was supported by any consideration.

2. After determining that a written agreement was void, did the District Court err in relying upon that agreement to support its judgment that specified the terms for the underlying oral agreements[?]

3. When the only witness to support the Plaintiff's theory regarding the parties' "course of conduct" was not credible, did the Court err in granting judgment in favor of Plaintiff[?]

4. Whether the District Court erred when it awarded Plaintiff her attorney's fees incurred in relation to her unsuccess-

ful attempt to establish her allegations of fraud and conspiracy.

Ms. Woodcock rephrases the issues in the following manner:

1. Did the trial court correctly hold Appellant Mary Beth Schlesinger liable to ... Appellee Betty Jane Woodcock for the principal, interest, late penalty fees and collection costs, including attorney's fees, for five unpaid loans which Appellee made to Appellant and her company?

A. Did the trial court commit reversible error in determining that an antecedent document entitled "Loan Agreement" was unenforceable for lack of consideration, and thus, did not relieve the Appellant Defendant of her liability for the five unpaid loans?

B. Did the trial court commit reversible error in finding the five unpaid loans to be enforceable by Appellee–Plaintiff against Appellant–Defendant, even in the absence of supporting promissory notes?

C. Did the trial court abuse its discretion in awarding Appellee–Plaintiff her reasonable attorney's fees and costs of collection?

## FACTS

[¶ 3] In 1997, CSR began experiencing financial difficulties and needed funds to make its payroll. Ms. Schlesinger, the sole shareholder and president, approached her friend, Ted Dixon, a financial planner and investment advisor, seeking his assistance in obtaining the necessary funds. Mr. Dixon agreed to help and approached three of his clients, as well as his parents, with the possibility of them providing loans to CSR as investments.

[¶ 4] From the outset, Mr. Dixon made it clear to Ms. Schlesinger that, in order to justify advising his clients to take money out of their current investments, the terms of any loans would necessarily require a high rate of return and strong collateralization. He specifically informed Ms. Schlesinger, based on his experience with similar situations, the interest rate would have to be twenty-five percent and the loans short term.

In those initial discussions, Mr. Dixon also informed Ms. Schlesinger that, on behalf of his clients, he would require her personal liability for repayment of the loans in addition to CSR. He explained this requirement was necessary to provide his clients maximum security. A total of fourteen loans were entered into between Mr. Dixon's clients, Ms. Schlesinger, and CSR between April 1997 and April 1998. All the loans from Mr. Dixon's clients to CSR and Ms. Schlesinger documented by promissory notes contained terms providing twenty-five percent interest, joint and several liability of Ms. Schlesinger and CSR, and attorney's fees. Some of the loans were documented in promissory notes, and others were not. One such loan made by Ms. Woodcock, a person in her seventies, on January 12, 1998, was documented by a receipt which included the notation "Loan to CSR Inc. Standard Terms." At no time did Ms. Schlesinger question or object to the terms as described by Mr. Dixon or as set out in the documentation. The following is a complete list of the undisputed loans from Ms. Woodcock:

| 4/11/97 | $20,000 | Executed note | Paid |
|---|---|---|---|
| 4/17/97 | $50,000 | Executed note | Paid |
| 11/24/97 | $25,000 | No note | Unpaid |
| 12/15/97 | $15,000 | Executed note | Unpaid |
| 1/12/98 | $25,000 | Receipt | Unpaid |
| 3/18/98 | $15,000 | No note | Unpaid |
| 4/16/98 | $ 9,000 | No note | Unpaid |

[¶ 5] During 1998, Mr. Dixon began experiencing serious personal problems which impaired his ability to conduct his business. Ms. Schlesinger had difficulty obtaining responses to inquiries and documentation for loans she was receiving through Mr. Dixon. The record reflects that several loans Mr. Dixon arranged between Ms. Woodcock and Ms. Schlesinger in late 1997 and 1998 were not accompanied by written promissory notes. However, Ms. Schlesinger provided no evidence of any discussion prior to the loans relating to a change of the standard terms, and Ms. Woodcock relied upon those terms in making the loans. Mr. Dixon admitted that it was his fault promissory notes were not found to memorialize all the loans but he "couldn't imagine approving a loan without those terms." No negotiations ever occurred between Ms. Schlesinger and Ms. Woodcock

directly, and Ms. Woodcock relied upon Mr. Dixon to make good investments on her behalf.

[¶ 6] Ms. Schlesinger testified that Mr. Dixon set forth the loan terms on a "take it or leave it" basis and she agreed to them, including joint and several liability. She had no explanation or evidence to suggest what the terms of the undocumented loans would have been if the "standard terms" were not applied. At about the same time frame as the last undocumented Woodcock loans were made in March and April of 1998, a loan was made by another of Mr. Dixon's clients which was documented by a promissory note with the same standard terms—twenty-five percent interest, joint and several liability, and attorney's fees.

[¶ 7] Approximately five months after Ms. Woodcock made the last loan to Ms. Schlesinger and CSR, Ms. Schlesinger's father presented a modified loan agreement to Ms. Woodcock and informed her that, because several of her loans were not documented by promissory notes, this modified loan agreement would provide her greater security. The modified loan agreement purported to supersede all prior agreements relating to the loans, reduced the interest rate to ten percent, and, in effect, eliminated the joint and several liability. By its own terms, the modified loan agreement supported Ms. Woodcock's contention that all the previous loans were subject to the same "standard terms." The section discussing the computation of interest due, drafted by Ms. Schlesinger's representatives, referred to the verbal terms negotiated by Mr. Dixon including the twenty-five percent interest rate.

[¶ 8] The modified loan agreement lowered the interest rate, eliminated the protection of joint and several liability, and extended the term of the loans. It provided no additional protection of Ms. Woodcock's legal right to repayment of the previous loans. Ms. Woodcock signed the loan agreement without Mr. Dixon's knowledge. A few weeks subsequent to the agreement being signed, CSR filed for bankruptcy.

[¶ 9] Ms. Woodcock filed suit in an effort to collect on the loans and also made allegations of fraud and conspiracy. Both parties sought summary judgment on the modified loan agreement. The trial court granted Ms. Woodcock's summary judgment motion concluding the modified loan agreement lacked consideration and was void.

[¶ 10] In addition, the trial court granted Ms. Woodcock summary judgment on the December 15, 1997, promissory note executed by Ms. Schlesinger and on certain of the standard loan terms applicable to the remaining loans including the twenty-five percent interest rate and the thirty-five-day repayment deadline calculated from the date of the loans. The trial court also granted Ms. Schlesinger summary judgment on the fraud and civil conspiracy claims.

[¶ 11] Following a trial to the court on the remaining issues, the court found a course of dealing existed between the parties which proved each of the oral contracts for loans included: joint and several liability; twenty-five percent interest per annum on any unpaid balance; short term due dates; late charges of one percent on the principal; and the obligation of the borrowers, including Ms. Schlesinger, to pay all reasonable attorney's fees and costs of collection. Judgment was awarded for $89,000 in principal, $52,995.89 in interest through June 2, 2000, $890 in late fees, $11,140 in attorney's fees and costs of collection, and $996.20 in court costs. Ms. Schlesinger appealed both the summary judgment order and the final judgment.

## STANDARD OF REVIEW

### A. Summary Judgment

[¶ 12] It is well recognized that summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Hovendick v. Ruby,* 10 P.3d 1119, 1122 (Wyo.2000); *Mountain Cement Company v. Johnson,* 884 P.2d 30, 32 (Wyo. 1994). This court reviews a summary judgment in the same light as the district court, utilizing the same materials and following the same standards. *Hovendick,* 10 P.3d at 1122. The record is examined from the vantage point most favorable to the party opposing the motion, and that party is given the

benefit of all favorable inferences which may fairly be drawn from the record. *Id.; Four Nines Gold, Inc. v. 71 Construction, Inc.*, 809 P.2d 236, 238 (Wyo.1991). The propriety of granting a summary judgment motion depends upon the correctness of the court's dual findings that there is no genuine issue as to any material fact and the prevailing party is entitled to a judgment as a matter of law. *Bender v. Phillips*, 8 P.3d 1074, 1077 (Wyo.2000). Questions of law are reviewed *de novo* without affording deference to the district court's decision. *Boley v. Greenough*, 2001 WY 47, ¶ 10, 22 P.3d 854, ¶ 10 (2001).

**B. Findings and Conclusions Subsequent to Bench Trial**

[¶ 13] "When a trial court in a bench trial makes express findings of fact and conclusions of law, we review the factual determinations under a clearly erroneous standard and the legal conclusions *de novo*." *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo.1999); *see also Cross v. Berg Lumber Company*, 7 P.3d 922, 928 (Wyo.2000); *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 958 (Wyo.1999); *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). This court does not weigh the evidence *de novo*; therefore, findings may not be set aside because we would have reached a different result. *Cross*, 7 P.3d at 928; *Shores v. Lindsey*, 591 P.2d 895, 899 (Wyo.1979). Moreover, the appellant bears the burden of persuading the appellate court that the finding is erroneous. *Cross*, 7 P.3d at 928; 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2585 (1995).

## DISCUSSION

**A. Validity of the Modified Loan Agreement**

[¶ 14] The fundamental question concerning the validity of the modified loan agreement is whether the agreement is supported by any consideration. Did Ms. Woodcock receive anything of value in exchange for her supposed agreement five months after the last loan to substantially reduce the interest rate, eliminate joint and several lia-

bility, and alter other terms of the loans? Without valid consideration, the agreement is invalid. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1272 (Wyo.1993); *see also Brodie v. General Chemical Corporation*, 934 P.2d 1263, 1268 (Wyo.1997); *Idaho Migrant Council, Inc. v. Warila*, 890 P.2d 39, 41 (Wyo.1995). Consideration may take a variety of forms including the performance of some act, a forbearance, or the creation, modification, or destruction of a legal relationship. *Prudential Preferred Properties*, 859 P.2d at 1272; *Moorcroft State Bank v. Morel*, 701 P.2d 1159, 1161–62 (Wyo.1985). The problem Ms. Schlesinger's argument faces is, the performance or promise offered as consideration cannot be for an obligation the promisor is already legally required to perform.

It is well recognized that the performance of a duty imposed by law is insufficient consideration to support a contract. *See, e.g., Hale v. Brewster*, 81 N.M. 342, 467 P.2d 8, 11 (1970) (court-appointed attorney had duty to accept payment from court for representation as sole compensation; if client's note was given to attorney as fee for services, attorney was already bound to perform and client had a valid defense to action by attorney on the note); *Gragg v. James*, 452 P.2d 579, 587 (Okla. 1969) (oral modification to contract relieving defendant of responsibility must be supported by additional consideration to be enforceable); *Walden v. Backus*, 81 Nev. 634, 408 P.2d 712, 714 (1965) (buyer's relinquishment of premises insufficient to support accord where buyer was already bound under sale agreement to return premises); Restatement (Second) of Contracts § 73 (1981).

*Prows v. State*, 822 P.2d 764, 768 (Utah 1991). Payment of a debt which is due and undisputed does not constitute consideration for a promise. 17A Am.Jur.2d *Contracts* § 145 (1991). Likewise, a mere promise to pay a debt for which the promisor is already legally bound does not constitute a consideration sufficient to support a new contract. *Id; see also Przylepa v. Przylepa*, 77 Ohio App.3d 808, 603 N.E.2d 1083, 1085 (1991); *Shannon v. Universal Mortgage & Discount*

*Co.,* 116 Ohio St. 609, 157 N.E. 478, 481 (1927). Specifically, the promise to pay a debt already due is not sufficient consideration for a creditor's promise to forbear the time of payment. *O'Brien v. General Motors Acceptance Corporation,* 362 P.2d 455, 458 (Wyo.1961).

[¶ 15] Ms. Schlesinger has argued the modified loan agreement provided protection to assure payment of the outstanding loans over and above the protection Ms. Woodcock already had under the notes and oral agreements. However, if the terms of the oral agreements were known through the parties' course of conduct, no further protection was provided by the modified loan agreement. Certainly, the modified loan agreement provided no security or collateral which might have been adequate consideration. At bottom, the validity of the modified loan agreement and the enforceability of the oral agreements are mutually exclusive. If the oral agreements are enforceable, the loan agreement offers Ms. Woodcock nothing but substantially less attractive loan terms. If the oral agreements are not enforceable, the modified loan agreement is of value to Ms. Woodcock, or at least it was prior to CSR's filing for bankruptcy.

[¶ 16] We agree with the trial court that the terms of the oral loan agreements are knowable and certain given the parties' clear course of conduct over a year's time with fourteen different loans and four different lenders. After hearing all the evidence, the trial court made factual findings that the terms of Ms. Woodcock's agreement to loan money to Ms. Schlesinger and CSR included twenty-five percent interest, a term of forty days at most, joint and several liability, a one percent late fee, and payment by the debtor of all reasonable attorney's fees and costs of collection. We give great deference to the trier of fact and find adequate evidence in the record to support these findings. *Raymond v. Raymond,* 956 P.2d 329, 332 (Wyo. 1998); *Brown v. State,* 944 P.2d 1168, 1170 (Wyo.1997).

[¶ 17] Given those facts, Ms. Woodcock had an enforceable contract, and the *post hoc* modified loan agreement provided her with no greater security than that to which she was already entitled by law. To suggest, as Ms. Schlesinger does, that, because Ms. Woodcock, an elderly person not represented by counsel in the review of the loan agreement, was "thankful" to see the agreement somehow provided consideration for giving up a bargained for twenty-five percent interest rate, joint and several liability, and costs of collection is inherently suspect. As noted in the comment to Restatement (Second) of Contracts:

> A claim that the performance of a legal duty furnished consideration for a promise often raises a suspicion that the transaction was gratuitous or mistaken or unconscionable.... Because of the likelihood that the promise was obtained by an express or implied threat to withhold performance of a legal duty, the promise does not have the presumptive social utility normally found in a bargain.

Restatement (Second) of Contracts § 73 cmt. a at 179–80 (1981). Ms. Schlesinger's contention the modified loan agreement benefited Ms. Woodcock by the mere fact that it documented the previous loans misses the mark. It appears much more likely Ms. Schlesinger, in an attempt to avoid the admittedly onerous loan terms, took advantage of Mr. Dixon's impairment which left Ms. Woodcock vulnerable to the suggestion the modified loan agreement was in her interest. Quite the opposite is true; the agreement removed the only protection Ms. Woodcock had for repayment of the loans Ms. Schlesinger's personal liability.

[¶ 18] Ms. Schlesinger further argues to this court that, even if the modified loan agreement lacked consideration, pursuant to the Uniform Commercial Code provisions Wyo. Stat. Ann. §§ 34.1–1–107 [1] and 34.1–2–209(a) [2] (LexisNexis 2001), it is

---

1. Section 34.1–1–107 provides: "Any claim or right arising out of an alleged breach can be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party."

2. Section 34.1–2–209(a) provides: "An agreement modifying a contract within this article needs no consideration to be binding."

not invalid. These UCC contentions were never presented to the trial court. Excepting appeals involving issues of jurisdiction or fundamental rights, we customarily will not consider issues raised for the first time on appeal. *Robinson v. Pacificorp*, 10 P.3d 1133, 1136 (Wyo.2000); *WW. Enterprises, Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo.1998); *see also Rowan v. Rowan*, 786 P.2d 886, 889 (Wyo.1990); *Dennis v. Dennis*, 675 P.2d 265, 266 (Wyo.1984). On this well established principle, we decline to address these newly presented UCC contentions.

[¶ 19] Ms. Schlesinger also complains, without providing any supporting authority, that, if the loan agreement is invalid, the court erred when it considered language in the agreement evidencing her knowledge and agreement that the loans carried a twenty-five percent interest rate. Simply because the agreement was invalid and not binding on Ms. Woodcock does not require the court to ignore the facts and circumstances surrounding the drafting of the agreement as they pertain to other issues in the case. Generally, relevant evidence is admissible. W.R.E. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. "Admission of evidence ... is within the sound discretion of the trial court; we will not disturb evidentiary rulings unless the appellant demonstrates a clear abuse of discretion." *Young v. HAC, LLC*, 2001 WY 50, ¶ 6, 24 P.3d 1142, ¶ 6 (2001); *see also Brown v. Michael Pryor, M.D., P.C.*, 954 P.2d 1349, 1350 (Wyo.1998). Ms. Schlesinger's bald assertion does not establish abuse of discretion, and we will not disturb the trial court's determination on this basis.

## B. Witness Credibility

[¶ 20] Ms. Schlesinger has argued that Mr. Dixon's impairment and purported memory deficits undermined his credibility and the trial court erred in relying on his testimony. This issue was fully explored at trial, and we give deference to the judge's opportunity to assess the credibility of the witnesses. *Hammond v. Hammond*, 14 P.3d 199, 203 (Wyo.2000). After careful review of the record, we cannot conclude that the trial court's findings were clearly erroneous.

## C. Attorney's Fees and Costs of Collection

[¶ 21] Wyoming subscribes to the American rule regarding recovery of attorneys' fees. Under the American rule, each party is generally responsible for his own attorneys' fees. A prevailing party may, however, be reimbursed for his attorneys' fees when express statutory or contractual authorization exists for such an award.

*Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 949 (Wyo.2000) (citations omitted). In this case, as determined by the trial court, Ms. Woodcock clearly prevailed, and the standard contract terms provided for the award of the attorney's fees and costs incurred to collect the underlying debt should such become necessary, as it obviously did. To determine the reasonableness of the attorney's fees award, Wyoming employs the two-factor federal lodestar test. *Cline*, 998 P.2d at 951; *Johnston v. Stephenson*, 938 P.2d 861, 862 (Wyo. 1997); *see also* Wyo. Stat. Ann. § 1–14–126(b) (LexisNexis 2001). These factors are: "(1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward." *Johnston*, 938 P.2d at 862–63; *see also Cline*, 998 P.2d at 951. It follows therefrom that the trial court's determination concerning attorney's fees is reviewed under an abuse of discretion standard. *Cowardin v. Finnerty*, 994 P.2d 335, 337 (Wyo.1999); *Johnston*, 938 P.2d at 862.

[¶ 22] Ms. Woodcock provided detailed time records and her attorney's affidavit to support the reasonableness of the fees and costs claimed. By decision letter dated June 14, 2000, the trial court gave careful consideration to the evidence supporting the request for attorney's fees and Ms. Schlesinger's objections to the award. From the language of the letter, it is clear the lodestar factors were considered although not specifi-

cally identified as such. This record adequately supports the court's award, and we can find no abuse of discretion.

### CONCLUSION

[¶ 23]   CSR and Ms. Schlesinger entered into seven short term, high risk loan agreements with Ms. Woodcock as negotiated and arranged by Mr. Dixon.   Four loans were documented by promissory notes or a receipt, and the other three loans were undocumented.   We conclude the trial court properly determined that the course of the parties' dealings established the terms of the undocumented loans.   We further conclude the modified loan agreement that substantially altered the terms of the original agreements without providing anything of value to Ms. Woodcock was invalid for lack of consideration.   The trial court's determination on the merits was not clearly erroneous, and its discretionary award of attorney's fees and costs was supported by the record.

[¶ 24]   Affirmed.