2009 WY 83

Kenneth HALL, Appellant (Plaintiff),

v.

Bill PERRY and Hidden Creek Outfitters, Appellees (Defendants).

No. S–08–0167.

Supreme Court of Wyoming.

June 30, 2009.

Representing Appellant: Matthew D. Winslow of Keegan & Winslow, P.C., Cody, Wyoming.

Representing Appellee: Patrick J. Murphy and Lori L. Gorseth of Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Murphy.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Kenneth Hall was injured when he was thrown from a horse while participating in a deer hunt guided by Hidden Creek Outfitters. The district court ruled that a document signed by Mr. Hall entitled "Release of Liability and User Indemnity Agreement Hunting and Camping" (the Release) precluded his negligence action and granted summary judgment in favor of Bill Perry and Hidden Creek Outfitters. Mr. Hall argues that the Release was not enforceable because it was not supported by separate consideration. We conclude that the Release was part of the parties' original agreement and, therefore, separate consideration was not required to make it enforceable.

[¶ 2] We affirm.

## ISSUES

[¶ 3] The dispositive question in this case is whether the district court properly ruled, as a matter of law, that the Release was enforceable without separate consideration.[1]

## FACTS

[¶ 4] Mr. Hall, a resident of North Carolina, and three of his friends planned a guided mule deer hunt in northwestern Wyoming in the fall of 2005. They contacted Bill Perry, the owner of Hidden Creek Outfitters, to act as their outfitter for the hunt. Hidden Creek Outfitters sent a "Letter Contract of Agreement" (hereinafter "Letter Agreement") to Mr. Hall. The Letter Agreement, signed by Mr. Hall (designated as "Client") on February 20, 2005, stated that Hidden Creek Outfitters (designated as "Outfitter") would provide him with a five-day guided hunt, preferably November 6 through 10, 2005. Hidden Creek Outfitters agreed to "stress safety throughout the hunt" and "[p]rovide professional, licensed guides" as well as other necessities such as food, lodging, etc. Mr. Hall agreed to "be personally responsible for each provision herein and sign each contract, agreement and attachment hereto." The Letter Agreement further provided:

2. . . . Client will provide Outfitter a list as to his physical limitations, allergies, health and weight problems, required medications, and dietary restrictions when returning this contract. Client understands that notwithstanding any other provisions of this contract, Outfitter may, in his sole discretion return any fees and decline to accept Client for reasons stated on such form. CLIENT AGREES THAT HE ASSUMES THE RISK OF HUNTING BASED UPON ANY DISCLOSED OR UNDISCLOSED CODITION (sic) REQUIRED BY SUCH FORM.

3. FEES AND CONDITIONS

In consideration of the Outfitter providing the services as set forth hereinabove the

---

1. In his opening brief, Mr. Hall articulates an additional issue challenging the district court's alternative ruling that, even if the Release was not valid, Mr. Hall was entitled only to contract damages under the terms of the parties' agreement and could not maintain an action in tort. Given our conclusion that the Release is valid, we need not consider Mr. Hall's second argument.

Client agrees to pay the Outfitter the sum of *$2500.00 [handwritten] plus a 3% forest service fee*, in U.S. funds or money order, as follows:

A. Deposit of [$1000.00 crossed out and $500.00 written in] which shall be paid by the Client to the Outfitter with a signed copy of this agreement OR the contract will be null and void and in no way binding on the Outfitter unless accepted by him in his sole discretion....

B. The balance of the fee shall be paid in two (2) installments as follows:

(1) 50% of hunt cost, minus deposit, when tag is drawn

(2) Balance due 30 days prior to hunt.

. . . .

G. In the event the Outfitter materially defaults in the performance of any portion of his obligations hereunder, due to his own fault, the Client, as his sole and exclusive remedy, either at law or equity, shall be entitled to the return of his fee in full upon demand....

4. DISCLOSURES, DISCLAIMERS, AND WAIVERS

The Client acknowledges that he has signed, understood and (sic) the Release and Indemnity Agreement, incorporated above, and further acknowledges that he understands that the risks associated with the primitive conditions of the hunt area, the elevation, weather conditions, unavailability of medical attention, travel by foot, vehicle, or horseback ... are substantial, and that while the Outfitter will attempt through ordinary and reasonable care to minimize the risks, such risks are specifically assumed by the Client.

5. MISCELLANEOUS

A. Any attachment or addendum hereto signed by the parties, or one party as required by the terms thereof, shall be a part of this agreement and be incorporated herein by reference as if set forth verbatim. In the event that any provision contained in such attachment or addendum is contrary to or inconsistent with any provisions set forth herein, the provisions of the attachment or addendum shall supersede and prevail over any such provision herein as to such inconsistency.

B. This agreement, including exhibits, schedules, attachments, and addenda attached hereto sets forth the entire understanding and agreement between the parties and supersedes any prior agreement, written or oral.

The signed Letter Agreement indicated that Mr. Hall had provided a $500.00 deposit.

[¶ 5] Mr. Hall's hunting party arrived at the lodge used by Hidden Creek Outfitters on November 5, 2005. They gathered around the dining table where a Hidden Creek Outfitters employee, Jim Keilholtz, gave them the Release. They were asked to read over the document, ask any questions, and then sign and initial it in the indicated places. The Release provided in relevant part:

I, [handwritten] *Kenneth R. Hall* (CLIENT) hereby acknowledge that I have voluntarily applied and contracted to participate in the sport or activity of hunting/camping from a primitive camp, with equipment and or services to be provided by BILL PERRY, D.B.A. HIDDEN CREEK OUTFITTERS/TETON WILDERNESS OUTFITTING, (OUTFITTER). By my initials hereon and at each place hereafter marked (INITIAL [handwritten] *KRH*) I have signified my agreement with and acceptance of the terms, statements, and conditions herein.

I UNDERSTAND AND AGREE that the described sport or activity and all other hazards and exposures connected with the activities conducted in the outdoors *do involve risk* and that I am cognizant of the risk and dangers inherent with hunting and camping, and in particular in the mountains of Wyoming and that I ... [am] fully capable of participating in the activities contracted for and willingly assume the risk of injury as my responsibility, including ... use of animals, ... collisions with trees, rocks, or other manmade or natural obstacles, whether they are obvious or not obvious. (INITIAL [handwritten] *KRH*).

. . . .

I UNDERSTAND AND AGREE that any route or activity, chosen as a part of the hunting/camping trip in which I ... am participating may not be the safest but has or will be chosen for its interest, challenge, or best meeting the goals of the services for which I am contracting. Should animals ever be used or are present as a part of our activities, I ... understand that an animal irrespective of its training and usual past behavior and characteristics, may act or react *unpredictably* at times based upon instinct or fright which likewise is an inherent risk to be assumed by each participant in the activity. (INITIAL [handwritten] *KRH* ).

AS LAWFUL CONSIDERATION for being permitted by Outfitter to participate in the referenced activities, I do hereby *RELEASE FROM ANY LEGAL LIABILITY, AGREE NOT TO SUE, CLAIM AGAINST, ATTACH THE PROPERTY OF, OR PROSECUTE, AND FURTHER AGREE TO DEFEND INDEMNITY (sic) AND HOLD HARMLESS* THE Outfitter ... and all of [its] officers, members, organizations, agents, and employees for any injury or death caused by or resulting from my participation in the activities described above, *WHETHER OR NOT SUCH INJURY OR DEATH WAS CAUSED BY THEIR NEGLIGENCE OR FROM ANY OTHER CAUSE.* (INITIAL [handwritten] *KRH* ).

Mr. Hall signed the Release and gave Hidden Creek Outfitters a check for the balance due on his hunt, less the $500.00 deposit. The next morning, he began his hunt, guided by Gary "Stretch" Bauer. On the last day of the hunt, November 10, 2005, Mr. Hall was thrown from a horse, resulting in multiple broken ribs and a hemothorax.[2]

[¶ 6] Mr. Hall filed suit claiming that Hidden Creek Outfitters, acting through its guide, Mr. Bauer, was negligent in overseeing the hunters with the horses and that Mr. Bauer's actions amounted to willful and wanton misconduct. Mr. Perry and Hidden Creek Outfitters filed a motion for summary judgment, asserting that Mr. Hall's negligence claim was precluded by the Release and there were no facts to support the allegation that Mr. Bauer's actions amounted to willful and wanton misconduct. Mr. Hall responded by arguing that the Release was not supported by consideration and violated public policy. He also claimed that there were genuine issues of material fact as to whether Mr. Bauer's actions amounted to willful and wanton misconduct.

[¶ 7] The district court granted summary judgment in favor of Hidden Creek Outfitters and Mr. Perry, ruling that the Release was part of the original contract, thereby requiring no additional consideration, and did not violate public policy. It also decided, as a matter of law, that Mr. Bauer's actions did not amount to willful and wanton misconduct. Mr. Hall appealed.[3]

## SUMMARY JUDGMENT LAW

[¶ 8] We review the district court's summary judgment order de novo, utilizing the same standards and reviewing the same materials as the district court. *Schlesinger v. Woodcock,* 2001 WY 120, ¶ 12, 35 P.3d 1232, 1236–37 (Wyo.2001). Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Hovendick v. Ruby,* 10 P.3d 1119, 1122 (Wyo.2000); *Mountain Cement Company v. Johnson,* 884 P.2d 30, 32 (Wyo.1994). We examine the record from the vantage point most favorable to the party opposing the motion, and give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Schlesinger,* ¶ 12, 35 P.3d at 1236–37. See also, *Four*

---

2. The parties disagree about the circumstances leading to Mr. Hall's injuries. Mr. Hall testified that he was thrown from the horse when it bucked; Mr. Bauer testified that Mr. Hall simply fell from the horse after it tripped on a rock. Although our summary judgment standard requires that we accept Mr. Hall's version of the facts at this juncture, the circumstances of Mr. Hall's injury are not relevant to our resolution of the issue presented.

3. Mr. Hall does not challenge the district court's rulings that Mr. Bauer's conduct was not willful and wanton and the Release does not violate public policy.

*Nines Gold, Inc. v. 71 Construction, Inc.,* 809 P.2d 236, 238 (Wyo.1991).

## DISCUSSION

[¶ 9] Mr. Hall claims that the district court erred by ruling that no new consideration was required to make the Release enforceable. Releases and exculpatory clauses are types of contracts. *Massengill v. S.M.A.R.T. Sports Medicine Clinic, P.C.,* 996 P.2d 1132, 1135 (Wyo.2000); *Kelliher v. Herman,* 701 P.2d 1157, 1159 (Wyo.1985). Like any contract, in order to enter into a valid release, there must be offer, acceptance, and consideration. *Mueller v. Zimmer,* 2005 WY 156, ¶ 18, 124 P.3d 340, 350 (Wyo.2005). Contractual consideration is defined as "a benefit to the promisor or a detriment to the promisee." *Roussalis v. Wyoming Medical Center,* 4 P.3d 209, 240 (Wyo.2000).

[¶ 10] Mr. Hall argues that, after he signed the Letter Agreement and provided the initial $500.00 deposit, Hidden Creek Outfitters was obligated to take him on the hunt. He claims that the Letter Agreement formed the entire contract between the parties and the Release was a separate agreement which required consideration apart from the fee he paid for the hunt.

[¶ 11] As suggested in Mr. Hall's argument, we follow the "pre-existing duty rule," meaning "an agreement to do what one is already bound to do cannot serve as consideration to support a modification" of the parties' agreement. *Roussalis,* 4 P.3d at 239. This Court explored the pre-existing duty concept in *Schlesinger.* On several occasions, Ms. Schlesinger borrowed money for her business, Custom Syndicated Research, Incorporate (CSR), from Ms. Woodcock. Some of the loans were documented by promissory notes, which included terms of 25% interest, a short period for repayment and personal liability for Ms. Schlesinger. Promissory notes were not, however, given for some of the loans. Just prior to declaring CSR's bankruptcy, Ms. Schlesinger had Ms. Woodcock execute a modified loan agreement on terms much more favorable to Ms. Schlesinger, to-wit: 10% interest, a longer repayment period and eliminating her personal liability for the loans. We ruled that the modified loan agreement was not enforceable because Ms. Schlesinger did not give Ms. Woodcock any new or additional consideration for it. Ms. Schlesinger had a duty to repay the loans before the modified loan agreement was executed and she did not offer any additional benefit to Ms. Woodcock for the modification. We said the modified loan agreement was unenforceable because "the performance of a duty imposed by law is insufficient consideration to support a contract." *Schlesinger,* ¶ 14, 35 P.3d at 1237.

[¶ 12] In this case, Hidden Creek Outfitters argues that the preexisting duty rule does not apply because the Release was part of the parties' original agreement and, thus, no new or additional consideration was needed to make the Release enforceable. *Roussalis* offers some guidance on this matter. There, Wyoming Medical Center (WMC) and two doctors entered into an agreement in which the doctors agreed to convey a building they owned to WMC in return for its funding of the construction of a new medical office for them. WMC argued that it was not required to incorporate certain "special features" into the new office building because that obligation was part of a subsequent contract modification and was not supported by consideration. Rejecting WMC's argument, we ruled that, although not spelled out in detail, the original agreement contemplated the special features; consequently, no new consideration was necessary to support WMC's promise to provide the special features. *Roussalis,* 4 P.3d at 240. Accordingly, under *Roussalis,* if the challenged provisions were contemplated in the parties' original understanding, although they may not be set out in detail, no new consideration is required to support such provisions.

[¶ 13] In order to determine whether new or additional consideration was required to support the Release, we must interpret the Release in light of the Letter Agreement. We construe the documents in accordance with our standard rules of contract construction.

In contract litigation, when the terms of the agreement are unambiguous, the inter-

pretation is a question of law. . . . *Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo.1996); *Union Pacific Resources Co. v. Texaco, Inc.*, 882 P.2d 212, 218–19 (Wyo.1994). Whether a contract is ambiguous is a question of law for the reviewing court. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993). We review questions of law de novo without affording deference to the decision of the district court. *Hermreck v. United Parcel Service, Inc.*, 938 P.2d 863, 866 (Wyo.1997); *Griess v. Office of the Atty. Gen., Div. of Criminal Investigation*, 932 P.2d 734, 736 (Wyo.1997).

According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo.1993). . . . In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo. 1996); *Prudential Preferred Properties*, 859 P.2d at 1271.

*Farmer v. Rickard*, 2007 WY 19, ¶ 12, 150 P.3d 1185, 1191 (Wyo.2007) (quoting *Roney v. B.B.C. Corp.*, 2004 WY 113, ¶ 10, 98 P.3d 196, 200 (Wyo.2004)). When interpreting contracts, we seek to determine the intent of the parties. In undertaking that function, we consider the contract as a whole, giving effect to each provision, if possible. Common sense is a guiding principle in interpreting a contract's terms. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 712 (Wyo.1987); *Schutkowski v. Carey*, 725 P.2d 1057, 1062 (Wyo.1986); *Wunsch v. Pickering*, 2008 WY 131, ¶ 17, 195 P.3d 1032, 1039–40 (Wyo.2008).

[¶ 14] Paragraph 4 of the Letter Agreement states that "[t]he Client acknowledges that he has signed, understood and (sic) the Release and Indemnity Agreement, incorporated above[.]" Mr. Hall argues that, because the Letter Agreement indicated "the Release and Indemnity Agreement" would be signed prior to, or contemporaneously with,

the Letter Agreement, the parties were not referring to the Release since it was not provided to the hunters until they arrived at the lodge to begin their hunt. Mr. Hall further asserts that the "Release and Indemnity Agreement" language in the Letter Agreement was not referring to the Release he signed at the lodge, but rather to the assumption of risk language pertaining to any medical issues set out in paragraph 2 of the Letter Agreement:

> Client will provide Outfitter a list as to his physical limitations, allergies, health and weight problems, required medications, and dietary restrictions when returning this contract. Client understands that notwithstanding any other provisions of this contract, Outfitter may, in his sole discretion, return any fees and decline to accept Client for reasons stated on such form. **CLIENT AGREES THAT HE ASSUMES THE RISK OF HUNTING BASED UPON ANY DISCLOSED OR UNDISCLOSED CODITION (sic) REQUIRED BY SUCH FORM.** [Emphasis in original.]

[¶ 15] The Release was entitled "**Release** of Liability **and** User **Indemnity Agreement** Hunting and Camping" (emphasis added). The title thus fits within the meaning of the Letter Agreement's reference to a "Release and Indemnity Agreement." Mr. Hall signed and initialed the Release in several places, without any objection and without asking any questions, even though it was not presented to him prior to, or contemporaneously with, the Letter Agreement. The plain language of the Letter Agreement references a "Release and Indemnity Agreement," which was to be separately signed and incorporated. The Release was incorporated in the opening clause of the Letter Agreement, which stated that "Client shall be personally responsible for each provision herein and shall sign each contract, agreement, and attachment hereto." In order to accept Mr. Hall's position that the Release was not part of the parties' original agreement, we would have to ignore the Letter Agreement's clear reference to a separate Release and Indemnity Agreement. That would violate our rule of contract construction which requires us to give effect to

all provisions of a contract. *Wunsch,* ¶ 17, 195 P.3d at 1039–40.

[¶ 16] In contrast, the medical risk provision was not titled "Release and Indemnity Agreement" and it did not require a separate signature. Because the medical risk provision was included in full in the Letter Agreement, no incorporation was required. Thus, the medical risk provision obviously was not the "Release and Indemnity Agreement" referred to in the Letter Agreement. Considering the plain, unambiguous language of the Letter Agreement in a common sense fashion, it is clear that the parties contemplated that the provisions of the Release be included within their original understanding. Thus, this case fits into the *Roussalis* rationale, and no new consideration was required to make the Release enforceable.

[¶ 17] Additionally, the district court ruled that the Release was an addendum under Paragraph 5A of the Letter Agreement:

Any attachment or addendum hereto signed by the parties, or one party as required by the terms thereof, shall be a part of this agreement and be incorporated herein by reference as if set forth verbatim.

Although the district court recognized the Release was not attached to the Letter Agreement, it concluded that it was effective as an addendum because it was signed by Mr. Hall. An addendum is defined as: "[s]omething to be added, esp. to a document; a supplement." Black's Law Dictionary 41 (8th ed.2004). Mr. Hall claims that the Release could not be an addendum because it did not refer to the Letter Agreement and the Letter Agreement did not refer to it. As is apparent from our discussion above, we believe the Letter Agreement did refer to the Release. Moreover, while the Release did not refer to the Letter Agreement by name, it stated:

"I, *Kenneth R. Hall* (Client) hereby acknowledge that I have voluntarily applied and contracted to participate in the sport or activity of hunting/camping ... with equipment and or services provided by BILL PERRY, D.B.A. HIDDEN CREEK OUTFITTERS/TETON WILDERNESS OUTFITTING, (OUTFITTER)."

This statement is a clear reference to the document representing a contract between the parties, the Letter Agreement. Thus, we agree that the Release can be considered to be an addendum to the original contract and did not require additional consideration.

[¶ 18] Affirmed.