[Cite as *Schultheiss v. Heinrich Ents. Inc.*, 2016-Ohio-121.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| PATRICIA J. SCHULTHEISS, | : | Case No. 15CA20 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| HEINRICH ENTERPRISES, INC., ET AL., | : | |
| | : | **RELEASED: 1/12/2016** |
| Defendants-Appellees. | : | |
| | : | |

<u>APPEARANCES</u>:

Ethan Vessels, Fields, Dehmlow & Vessels, LLC, Marietta, Ohio, for appellant.

James S. Huggins and Daniel P. Corcoran, Theisen Brock, LPA, Marietta, Ohio, for appellee.

Harsha, J.

**{¶1}** The trial court granted summary judgment to Heinrich Enterprises, Inc. and other defendants (collectively "Heinrich defendants") on Patricia Schultheiss's complaint to cancel a 1950 oil and gas lease because of lack of production and breach of implied covenants to reasonably develop the land. The trial court declared that the lease was valid and binding on Schultheiss's property.

**{¶2}** The trial court determined that a 1963 assignment to the lessees of the lessor's royalty interest in return for the provision of free gas for domestic purposes satisfied the conditions of the lease. In the alternative the trial court also determined that the production in paying quantities from two wells located not on her property, but on the noncontiguous property in the original leasehold, held the entire lease even though she received no royalties from the production of those wells. The trial court also

rejected her second claim, determining that there was no breach of the implied covenant to develop the land.

{¶3}   Citing the lack of oil and gas production from 1977 to 1981, including a shut-in period from 1979 through 1980 in which even domestic gas was not produced, Schultheiss argues that the trial court erred in rejecting her claim that the lease expired by the terms in the habendum clause.  The Heinrich defendants do not deny the underlying basis of this argument, but instead argue that this contention is barred by the statute of limitations and laches.  However, we agree with Schultheiss for several reasons.  First, the trial court did not address her argument concerning lack of production from her well. Instead it concluded adjacent wells held the entire original leasehold. However, this could not occur because the lease terminated before those wells existed. Second, the Heinrich defendants waived the affirmative defenses because they did not assert the statute of limitations and laches in their answer or seek leave to amend their answer to include them.  Third, it is questionable whether the claimed affirmative defenses apply where the lease terminates under the express language of the contract and revests the leased estate in the lessor by operation of law. Because the termination of a lease by the operation of the habendum clause is automatic, any delay in bringing suit is immaterial.

{¶4}   The oil and gas lease expired in accordance with its own express provisions when no oil or gas was produced from 1977 to 1981, including a two-year period in which not even domestic gas was produced.  We sustain her assignment of error and reverse the judgment of the trial court.  Schultheiss's remaining contentions are rendered moot by our ruling.

## I. FACTS

{¶5}   In November 1950 Albert and Jennie File granted an oil and gas lease to Andrew Cline. The lease covered 112 acres in Warren and Marietta Townships, Washington County, Ohio, including the 48 acres now owned by Schultheiss.  The Files granted Cline and his heirs or assignees "all the oil and gas" in the property for a primary term of ten years and a secondary term "as much longer as oil or gas is found in paying quantities thereon." In return the Files were to receive the payment of one-eighth of all the oil produced and one-eighth of the sale proceeds of any gas produced.

{¶6}   In 1951, the Albert File Well No. 1 was drilled and completed on what is now Schultheiss's property.  Appellee Heinrich Enterprises, Inc. is the current operator of the well, which is the only one on the Schultheiss property.  In 1963, Schultheiss's predecessors-in-interest, Howard and Patricia Strickler, assigned to Heinrich's predecessor-in-interest, Fort Harmar Oil & Gas Company, their one-eighth royalty interest in the Albert File Well No. 1 in return for the use of gas for their dwelling on the property.  As a result of the assignment no lessee of the property has paid any royalties since 1963 for production related to the Albert File Well No. 1.

{¶7}   According to then-lessee Carl Heinrich's own records, the well-produced no oil or gas from January 1977 through September 1981, and the well did not produce even domestic gas for the benefit of Schultheiss's predecessors-in-interest in 1979 and 1980 when the well was shut-in.  The lessees' own production records additionally reported only sporadic production of oil or gas in the succeeding years from this well, including no gas production from 2009 through 2012 and oil production of only 2 barrels in 2009 and no barrels from 2009 through 2012.  The Heinrich defendants admit that for

at least the last eight years, the Albert File Well No. 1 has produced only oil or gas for domestic use. This domestic gas has been provided to Schultheiss for the dwelling on her property in accordance with the 1963 assignment.

{¶8}   As time passed the interests in the original 1950 leasehold estate were divided among different lessors and lessees. In 1977, W. Geoffrey Cline assigned his interest in the lease, including the royalty interest in the Albert File Well No. 1, to Carl Heinrich. In 1983, Heinrich assigned his interest in a 30-acre tract of land, which was part of the original leasehold and then owned by Ralph and Patricia Lindamood, to Bobby Anderson. The Ralph Lindamood Well No. 1 was drilled on the Lindamoods' property in that year.

{¶9}   A few months later Anderson entered into an agreement with the Lindamoods and Howard and Grace Strahler to pool the Lindamoods' 30-acre tract with additional property not included in the original leasehold. The pooled land formed a drilling unit on part of the acreage of the original leasehold, but it did not include Schultheiss's property. The Strahler and Lindamood Ralph Well No. 2, which was drilled on the pooled acreage, was located on the original leasehold property. The Ralph Lindamood Well No. 1 has produced oil and/or gas from 1988 to 2012, and the Strahler and Lindamood Ralph Well No. 2 has produced oil and/or gas from 1988 to 2009. The lessees paid royalties to the appropriate landowners for these wells from 1997 through 2013. Schultheiss received nothing because she did not own the land that produced the oil and gas. And her predecessor-in-interest had agreed to accept gas for personal use in lieu of royalties. Through various assignments, appellees succeeded to the original lessees' interest in the lease.

{¶10}  In October 2013 Schultheiss filed a complaint in the Washington County Court of Common Pleas against the Heinrich defendants.  In her subsequently amended complaint, Schultheiss sought a declaration that the 1950 oil and gas lease no longer encumbered her property because:  (1) there had not been production of oil and gas on her property sufficient for the lease to remain in effect and the lease had consequently expired under its own terms; and (2) appellees had breached the lease's implied covenant to reasonably develop the land.  Schultheiss alleged—and appellees admitted—that the Albert File Well No. 1 on her property had only produced oil or gas for domestic use.

{¶11}  In their answer to the amended complaint the Heinrich defendants raised certain defenses, but not the statute of limitations or laches.  They also sought a declaration that the oil and gas lease constituted a valid encumbrance on Schultheiss's property.

{¶12}  After the parties filed respective motions for summary judgment the trial court ruled in favor of the Heinrich defendants, declaring that the 1950 oil and gas lease is a valid encumbrance on Schultheiss's property.  This appeal ensued.

## II. ASSIGNMENT OF ERROR

{¶13}  Schultheiss assigns the following error for our review:

The trial court erred in granting summary judgment for Defendants and denying Plaintiff's motion for summary judgment.

## III. SUMMARY JUDGMENT & THE STANDARD OF REVIEW

{¶14}  Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56.  *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013–Ohio–3020, 992 N.E.2d 1126, ¶ 19; *Holland v. Gas Ents. Co.*, 4th Dist. Wash. No. 14CA35,

2015-Ohio-2527, ¶ 10.  Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made.  Civ.R. 56(C); *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011–Ohio–2266, 950 N.E.2d 157, ¶ 24; *Settlers Bank v. Burton*, 4th Dist. Washington Nos. 12CA36 and 12CA38, 2014–Ohio–335, 2014 WL 356626, ¶ 20.

**{¶15}** The moving party has the initial burden of informing the trial court of the basis for the motion and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial.  *Id.*; *Holland* at ¶ 11.

IV. LAW AND ANALYSIS

A.  Expiration of Lease on its Own Terms:

Lack of Oil and Gas Production from 1977 to 1981

**{¶16}** This case involves the interpretation of a written contract, which usually is a matter of law also requiring de novo review.  *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012–Ohio–3208, 972 N.E.2d 586, ¶ 14, quoting *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004–Ohio–24, 801 N.E.2d 452, ¶ (" '[t]he construction of a written contract is a matter of law that we review de novo' ").  "Our role is to ascertain and give effect to the intent of the parties, which is presumed to lie in the contract language."  *Boone Coleman Constr., Inc. v. Piketon*, 2014–Ohio–2377, 13 N.E.3d 1190, ¶ 18 (4th Dist.),

citing *Arnott* at ¶ 14. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus, superseded by statute on other grounds; *Harding v. Viking Internatl. Resources Co., Inc.*, 2013–Ohio–5236, 1 N.E.3d 872, ¶ 12 (4th Dist.).

**{¶17}** In our context, "[t]he rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument" and "[s]uch leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897); *Harding* at ¶ 11; *Bohlen v. Anadarko E & P Onshore, LLC*, 4th Dist. Washington App. No. 14CA13, 2014–Ohio–5819.

**{¶18}** Citing of the lack of oil and gas production from 1977 to 1981, including a shut-in period from 1979 through 1980 in which not even domestic gas was produced, Schultheiss asserts that the trial court erred in denying her claim that the lease expired by its own terms. Appellees do not deny the underlying factual or legal basis of this argument, but instead argue that this claim is barred by the statute of limitations and laches.

**{¶19}** However, Schultheiss's argument has merit. We have consistently recognized that an oil and gas lease containing a habendum clause stating the lease shall remain in force as long as paying quantities are produced expires when there is no oil or gas produced for two years or more:

> "Courts universally recognize the proposition that a mere temporary
> cessation in the production of a gas or oil well will not terminate the lease

under a habendum clause of an oil and gas lease where the owner of the lease exercises reasonable diligence and good faith in attempting to resume production of the well. A critical factor in determining the reasonableness of the operator's conduct is the length of time the well is out of production. * * *

A review of the reported cases reflects that while courts tend to hold the cessation of production temporary when the time periods are short, lessees have, for the most part, been held not to have proceeded diligently when the cessation from production exists for two years or more."

*Lauer v. Positron Energy Resources, Inc.*, 4th Dist. Wash. No. 13CA39, 2014-Ohio-4850, ¶ 12, quoting *Wagner v. Smith*, 8 Ohio App.3d 90, 92-94, 456 N.E.2d 523 (4 Dist.). Appellees do not contend that this precedent is inapplicable to their predecessors' well, which was inactive from 1977 to 1981, including two years that the well was shut-in in 1979 and 1980.

**{¶20}** However, the trial court did not explicitly address Schultheiss's contention. Instead, it resolved her entire first claim based on production from the Lindamood wells and the assignment of the royalty interest in the File well in return for free domestic gas. But the production from the Lindamood wells beginning in 1988 could not have held this property if the lease had already expired because of nonproduction from 1977 to 1981. And the 1963 assignment of the lessor's royalty interest in exchange for free domestic gas could not have held the lease because no domestic gas was produced in 1979 and 1980, when the File well was shut-in.

**{¶21}** Despite their current efforts to the contrary, appellees forfeited their statute-of-limitations and laches affirmative defenses by failing to raise them in their answer or an amended answer. "In pleading to a preceding pleading, a party shall set forth affirmatively * * * laches, * * * statute of limitations, * * * and any matter constituting

an avoidance or affirmative defense." Civ.R. 8(C). "Affirmative defenses other tha[n] those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amendment to the pleadings." *See Jim's Steak House, Inc. v. Cleveland*, 81 Ohio St.3d 18, 20, 688 N.E.3d 506 (1998); *see generally* Klein, Darling, and Terez, *Baldwin's Ohio Civil Practice*, Section 8:14 ("Affirmative defenses that are not presented in a responsive pleading pursuant to Civ.R. 8(C), not presented by motion before pleading [pursuant to Civ.R. 12(B)], or not presented by an amended pleading pursuant to Civ.R. 15 are waived"); Ernst, *Baldwin's Ohio Practice Tort Law*, Section 2:101 (2d Ed.2014). Neither laches nor the statute of limitations are listed in Civ.R. 12(B), so they are waived if not properly raised in a pleading. *See Poling v. Poling*, 4th Dist. Hocking No. 03CA3, 2003-Ohio-5601, ¶ 22 (appellant "waived his right to raise fraud as a defense in his response to the summary judgment motion" because he "did not raise fraud as an affirmative defense in his answer, nor did he raise it as a cause of action in his counterclaim or cross-claim").

**{¶22}** Appellees forfeited their right to raise laches and statute of limitations as affirmative defenses when they failed to raise them in a motion prior to pleading or in an answer or an amended answer. Apparently the trial court recognized this forfeiture as it did not mention either laches or any statute of limitations in resolving the parties' motions for summary judgment.

**{¶23}** Finally, it is questionable whether these claimed affirmative defenses even apply here. After the expiration of the primary term of the oil and gas lease, if the conditions of the secondary term are not met, the lease automatically expires. This occurred here when the File well did not produce oil or gas from 1977 to 1981. "The

terminology utilized in the habendum clause ([e.g.,] "and as long thereafter as") is generally construed to create a determinable fee interest, such that the lessee's interest automatically terminates upon lessee's failure to satisfy any of the listed provisions would serve to extend the terms of the lease. *In such a case, no affirmative action on the part of a lessor is required to formally terminate the lease; it expires on its owns terms.*" (Emphasis added.) *Tisdale v. Walla*, 11th Dist. Ashtabula No. 94-A-0008, 1994 WL 738744, *4 (Dec. 23, 1994); *see also Am. Energy Servs. v. Lekan*, 75 Ohio App.3d 205, 212, 598 N.E.2d 1315 (5th Dist. 1992) ("If after the expiration of the primary term the conditions of the secondary term are not continuing to be met, the lease terminates by the express terms of the contract herein and by operation of law and revests the leased estate in the lessor"). Therefore, when the appellees' predecessors-in-interest failed to meet the conditions of the secondary term of the lease because there was no production from the File well in 1979 and 1980, the lease terminated by its own terms; no further action was required by Schultheiss or her predecessors-in-interest.

**{¶24}** As a leading oil and gas law treatise has observed, when the lease has terminated by operation of law, any delay by the lessor in asserting termination of the lease cannot give life to the affirmative defenses of laches or the statute of limitations:

> No cases have been found in which the court has found that the doctrine of laches is a defense to the lessor's claim that a lease has terminated pursuant to the special limitation in the habendum clause. Since the termination of a lease by operation of the limitation provision of the habendum clause is automatic, the lessor's delay in bringing suit appears immaterial. Any defense that the lessor has waived his right to assert termination of the lease would seem inapplicable.

3-6 Williams & Meyers, *Oil and Gas Law*, Section 604.7 (2014) (footnotes omitted.)

{¶25} Courts have adopted this reasoning. "If the term of the lease previously ended by reason of failure to produce oil in paying quantities, nothing that occurred after that time would cancel the termination or initiate a new lease." *Montana-Fresno Oil Co. v. Powell*, 219 Cal.App.2d 653, 669 (1963); *see also Freeman v. Samedan Oil Corp.*, 78 S.W.3d 1 (Tex.App.2001), quoting *Ladd Petroleum Corp. v. Eagle Oil & Gas Co.*, 695 S.W.2d 99, 109 (Tex.App.1985) ("We conclude that 'once a lease terminates by its own terms, it cannot be ratified or revived.").

{¶26} Similarly, the Fifth District Court of Appeals recently rejected a claim that a statute of limitations barred lessors' declaratory action to quiet title in their property after the conditions of the secondary term were breached. *Cox v. Kimble*, 5th Dist. Guernsey No. 13 CA 32, 2015-Ohio-2470, ¶ 56-66. The court reasoned that "[w]hen Appellees failed to drill the second well, they failed to meet the express terms of the [secondary term] of the habendum clause of the oil and gas lease; therefore, the secondary term of the lease terminated by its own terms and 60 acres not included in the first well reverted to Appellants automatically." *Id.* at ¶ 65. Therefore, the equitable defenses asserted by appellees—even if they had been properly raised—do not apply in this context.[1]

---

[1] It appears that for Schultheiss's first declaratory judgment claim, which was in the nature of a quiet-title action, the applicable statute of limitations would have been the 21-year period set forth in R.C. 2305.04. *See Cox* at ¶ 59-62. Unlike her second claim, which was based on breach of implied covenants, her first claim was not for a breach of contract, but rather to confirm the termination of the lease that had already occurred by its express terms. *See Lauer v. Positron Energy Resources, Inc.*, 4th Dist. Wash. No. 13CA39, 2014-Ohio-4850, fn. 3 ("We have doubts that appellee was required to notify the appellants under paragraph 6 of the lease prior to filing his complaint because the issue presented in his first claim for relief was not one of breach of a condition or covenant, but rather, whether the lease had expired because of the failure to produce gas or oil for two years.")

**{¶27}**  The oil and gas lease expired in accordance with its own express provisions when no oil or gas was produced from 1979 to 1981, including a two-year period in which not even domestic gas was produced. Therefore the 1950 oil and gas lease is not a valid encumbrance on Schultheiss's property.  We sustain her assignment of error.

## B.  Remaining Arguments

**{¶28}**  Schutheiss also claims that the trial court also erred in denying her first claim for relief—that the oil and gas lease expired by its own terms—because the production of oil and gas in paying quantities from the Lindamood wells, which are not on her property, could not hold her noncontiguous property to the original lease.  In her reply brief Schultheiss argues that the trial court further erred in denying her second claim that the Heinrich defendants breached the implied covenant of the oil and gas lease to reasonably develop her property.  Because these claims have been rendered moot by our determination that the lease expired by its own terms, we need not address them.  App.R. 12(A)(1)(c); *Holland v. Gas Enterprises Co.*, 4th Dist. Washington No. 14CA35, 2015-Ohio-2527, ¶ 20 (appellant's remaining arguments are rendered moot after sustaining assignment of error reversing summary judgment).

## V. CONCLUSION

**{¶29}**  The trial court erred in granting summary judgment to appellees and denying Schultheiss's motion for summary judgment.  Having sustained Schultheiss's sole assignment of error, we reverse the judgment of the trial court and remand the cause to that court to enter judgment in favor of Schultheiss.

JUDGMENT REVERSED
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellees shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
William H. Harsha, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**